## Liquor Law Violation Informers

JOHN D. KILLIAN, 3RD, FRANK P. LAWLEY, JR., Deputy Attorneys General, and THOMAS D. MCBRIDE, Attorney General, June 5, 1958.—You have requested our opinion as to whether the identity of a person furnishing information to the liquor control board as to violations of the Liquor Code of April 12, 1951, P. L. 90, 47 PS §§1-101 to 9-902, must be revealed upon demand of a district attorney, grand jury, defense counsel or court.

At the outset, it is necessary to distinguish between communications relating to affairs of State, commonly known as State secrets, and communications to prosecuting officials of the government in regard to alleged crime made by an informer. Your inquiry relates solely to the latter situation, but, due to the similarity of the rules and the possibility of their being confused, we deem it advisable to briefly discuss the former situation.

1. With regard to communications relating to affairs of State, the rule is deep-rooted in the common law that such communications are generally privileged, and the officials of the government may refuse to disclose the contents thereof. The reasons for the rule are twofold: One, publication of State documents may involve danger to the government; and, two, publication might be injurious to government officials as individuals, and their freedom to communicate within the government restricted by the fact that such communications might otherwise become a basis for civil actions in libel or slander.

In Gray v. Pentland, 2 S. & R. 22 (1815), this rule was first applied in Pennsylvania when it was held

in an action for a libel contained in a deposition made and sent to the governor by a private citizen, charging plaintiff with misconduct in office, that it was within the governor's discretion to produce or withhold the letter, and parole evidence of its contents was inadmissible. The reasoning for the privilege as to State secrets was adequately expressed by Chief Justice Tilghman at page 31:

". . . It is a matter of very delicate concern, to compel the chief magistrate of the state to produce a paper which may have been addressed to him, in confidence that it should be kept secret. Many will be deterred from giving to the Governor that information which is necessary, if they are to do it at the hazard of an action, and of all the consequences flowing from the enmity of the accused. It would seem reasonable, therefore, that the Governor, who best knows the circumstances under which the charge has been exhibited to him, and can best judge of the motives of the accuser, should exercise his own judgment with respect to the propriety of producing the writing. It is not to be presumed, that he would protect a wanton and malicious libeller; and even if he should, it is better that a few of the guilty should escape, than a precedent be established, by which many innocent persons may be involved in trouble. . . ."

Appeal of Hartranft, 85 Pa. 433 (1877), is in accord with Gray v. Pentland, supra, in stating the rule that the governor and his cabinet officers are not bound to produce papers or disclose information committed to them in a judicial inquiry, including a grand jury investigation, when in their own judgment the disclosure would on public grounds be inexpedient.

Similarly, in Totten v. United States, 92 U. S. 105, 23 L. Ed. 605 (1875), it was held that an action would not lie against the Federal government in the court of claims upon a contract for secret services during

the Civil War, made between the President and the claimant, for the reason that it would be necessary to expose dealings between individuals and officers of the government to the serious detriment of the public; that the secrecy which such contracts imposed precludes any action for their enforcement.

In recent years, the application of the privilege as to State secrets has resulted in great controversy in the Federal courts in the area of the disclosure of prior statements of a government witness in Federal criminal prosecutions. The privilege has often been asserted against defendants in Federal criminal prosecutions who seek prior statements of government witnesses from government files for the purpose of impeachment.

Prior to 1957, the law was unsettled as to the basis for ordering disclosure, the procedural requirements necessary to acquire an order for disclosure and the extent of the disclosure required.[1] The 1957 decision in Jencks v. United States, 353 U. S. 657 (1957), seems to have resolved these problems. In that case, Jencks was convicted of filing a false noncommunist affidavit. Two witnesses who testified concerning his alleged

---

[1] In United States v. Beekman, 155 F. 2d 580 (2nd Cir. 1946), it was held that institution of a criminal action constitutes waiver of the privilege. United States v. Reynolds, 345 U. S. 1 (1953), contains dictum to the effect that to allow the Government to undertake the prosecution and then invoke a privilege to deprive the accused of anything which might be material to his defense is unconscionable. In Gordon v. United States, 344 U. S. 414 (1953), the Supreme Court required disclosure where contradiction was shown between the witness' testimony and the statements. In Goldman v. United States, 316 U. S. 129 (1942), disclosure rested in the discretion of the trial judge. United States v. Krulewitch, 145 F. 2d 76 (2nd Cir. 1944), followed the practice of requiring the Government to submit requested statements to the trial court for examination in camera, and the court would turn over to defendant any statements admissible for the purpose of impeachment.

communist activities revealed that they had submitted to the F. B. I. contemporaneous reports of their investigations concerning the matters as to which they testified. Defendant demanded that these reports be produced for the judge's inspection and, if any inconsistency appeared between the documents and the testimony of their authors, that they be turned over to defendant for use in cross-examination. The lower court denied the request on the ground that no showing of inconsistency had been made. The Supreme Court reversed, holding that a prior showing of inconsistency was unnecessary and that the reports must be given directly to defendant without any prior screening by the judge.

The decision in the Jencks case, supra, left one question unanswered, namely, whether portions of a witness' statement, unrelated to his testimony, could be excised from the report prior to examination by defendant. In an effort ostensibly to clarify the holding of the Supreme Court in the Jencks case, Congress enacted Public Law No. 85-269, 85th Cong., 1st Session 18 U. S. C. §3500 (Sept. 2, 1957). This statute reasserts the holding of Jencks that defendant is entitled to prior statements relating to the witness' testimony. If the Government claims, however, that a statement contains matter which is not relevant, the statement is to be produced for examination by the trial judge in camera who will excise irrelevant material.

This treatment of the privilege for State secrets indicates the true basis for the rule, namely, the interest of the public and the protection of this public interest. In sharp contrast to this is the basis for the rule as to the privilege against disclosure of the identity of informers, namely, the benefit of nondisclosure to the individual that he need not fear the consequences of coming forward with information.

2. The rule of privilege against disclosure of the identity of informers may be stated as follows: Every citizen has a right and a duty to communicate to executive officers any information which he has of the commission of an offense against the laws of his State or country; and such information when given is a privileged confidential communication: Vogel v. Gruaz, 110 U. S. 311 (1884) ; Worthington v. Scribner, 109 Mass. 487, 12 Am. Rep. 736 (1872). The rationale of the privilege is that informers will be deterred from aiding law enforcement authorities if their identity is disclosed because of fear of retribution and because of impairment of their existing sources of information.[2] In Worthington v. Scribner, supra, in which the Supreme Court of Massachusetts thoroughly reviewed the authorities, the court uttered the following oft-quoted statement of the rule and its foundation, at pages 488-489:

"It is the duty of every citizen to communicate to his Government any information which he has of the commission of an offense against its laws. To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of state, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the Government, to be exercised according to its views of what the interests of the public require. Courts of

[2] 8 Wigmore on Evidence (3rd ed.), §§2367-2375. At pages 751-752, Wigmore states: "A genuine privilege for communications . . . must be recognized for the communications made by informers to the Government; because such communications ought to receive encouragement, and because that confidence which will lead to such communications can be created only by holding out exemption from a compulsory disclosure of the informant's identity. . . . This privilege is well established, and its soundness cannot be questioned."

justice therefore will not compel or allow the discovery of such information, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the Government. The evidence is excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications."

In the recent case of Roviaro v. United States, 353 U. S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1956), the United States Supreme Court had occasion to review and apply the rules relating to the disclosure of the identity of a government informer.[3] In holding that the trial court committed prejudicial error in permitting the Federal government to withhold the identity of an undercover informer where such informer was the sole participant, other than the accused, in the transaction charged in the indictment and was the only witness who could amplify or contradict the testimony of government witnesses, the Supreme Court stated, at pages 59-62:

*"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.* Scher v. United States, 305 U. S. 251, 254; In re Quarles and Butler, 158 U. S. 532; Vogel v. Gruaz, 110 U. S. 311, 316. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

---

[3] There is a complete dearth of Pennsylvania authorities dealing with this rule.

"The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. *Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.* In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. . . .

"Three recent cases in the Courts of Appeals have involved the identical problem raised here—the Government's right to withhold the identity of an informer who helped to set up the commission of the crime and who was present at its occurrence. Portomene v. United States, 221 F. 2d 582; United States v. Conforti, 200 F. 2d 365; Sorrentino v. United States, 163 F. 2d 627. In each case it was stated that the identity of such an informer must be disclosed whenever the informer's testimony may be relevant and helpful to the accused's defense.

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (Italics supplied)

The rule may be thus stated as follows: Agencies and officers of the executive branch of the government may not be compelled to disclose the identity of informers except where, on grounds of due process and fundamental fairness to defendant in a criminal prosecution, the disclosure must be compelled by a trial court in order to enable defendant to prepare his defense, to lessen the risk of false testimony or to otherwise properly dispose of the case. This privilege for communications made by informers to the government applies only to the *identity* of the informer and not to the contents of the communication. Obviously, once the identity of the informer is admitted or known, there is no reason for pretended concealment. The privilege applies generally whenever the situation demands the encouragement of informers and where fear of the disclosure of their identity might deter the voluntary reporting of special information.

Applying these rules and principles to the situation of disclosing the identity of informers of the liquor control board, we must differentiate between disclosure to a court, defendant's counsel, district attorney and grand jury.

A court, on its own motion, cannot compel disclosure, where proceedings are not before it. Neither can a defendant's counsel compel disclosure without a court order. However in the course of a trial, either sua sponte or upon application of defendant's counsel, where principles of due process and fundamental fairness so require, a trial court may compel disclosure of the identity of one of your informers. When ordered so to do, you must comply with such demand and disclose the identity to the trial court or be faced with the dismissal of the prosecution.

A grand jury also cannot compel disclosure. A grand jury considers only those facts presented to it by the prosecution and has no interest in extraneous or other

matters or facts. A grand jury may only consider the identity of an informer when the prosecution furnishes it such fact.

Where the identity of an informer is sought by a district attorney a somewhat different situation is presented. We have noted that the rationale of the rule is to encourage informers and dispel fear of consequences of giving information to the government. It may be that in a given case the liquor control board has such interests in preserving the anonymity of an informer that no disclosure either to a court in response to an order or to any other person would be wise. In such a case the liquor control board has no alternative but to refrain from prosecuting.

Where, however, the board has decided to prosecute and places the case into the hands of a district attorney, it thereby relinquishes the privilege to refuse to reveal the identity of the informer upon the request of such district attorney.

The district attorney, as the public official in charge of the prosecution of the case, cannot be denied this information when he so requests it. As the prosecutor, he is the Government of the Commonwealth, the Commonwealth itself, and must have the information in order to perform his duty of prosecuting fairly. Once furnished such information, the district attorney may decide that disclosure of the information to the court and jury or defendant is not required in the interests of fairness. He need not volunteer the information where such is the fact. On the other hand, if he finds that the principles of due process and fundamental fairness to defendant require that the information be disclosed to the court or to defendant, and that to withhold it would amount to suppression of evidence, he must make such disclosure. Obviously, the district attorney should possess the information in order to make this crucial decision.

We are, therefore, of the opinion and you are accordingly advised that neither a court sua sponte, defendant's counsel or grand jury can compel disclosure of the identity of one of your informers but that you must disclose such fact upon receipt of a court order to disclose or a request of a district attorney charged with the duty of prosecuting an offense stemming from information communicated to you by such informer.